**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TERESA POWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-1072-F |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Teresa Powers, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.   Procedural Background**

Ms. Powers filed her application for SSI on July 28, 2004, alleging a disability onset date of January 1, 2000.[1] The Social Security Administration denied her application initially and on reconsideration. Following an administrative hearing, the Administrative Law Judge (ALJ) issued an unfavorable decision on July 10, 2009. *See* Administrative Record [Doc.

---

[1] As the Commissioner notes, SSI benefits may not be granted prior to a claimant's application filing date. *See* 20 C.F.R. §§ 416.335 and 416.501.

#9] (AR) at 15-27.[2]  The Appeals Council denied Ms. Power's request for review.  AR 7-9. This appeal followed.

## II.   The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920.  The ALJ first determined that Ms. Powers had not engaged in substantial gainful activity since her SSI application filing date, July 28, 2004.  AR 17.  At step two, the ALJ determined that Ms. Powers has the following severe impairments: multiple sclerosis, hepatitis C, and history of seizure disorder.   AR 17.  At step three, the ALJ found that Ms. Powers's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22.

> The ALJ next determined Ms. Powers's residual functional capacity (RFC):
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant is limited to only occasional stooping, balancing[,] climbing of ramps and stairs and no kneeling, crouching, crawling, and climbing of ropes, ladders and/or scaffolds.  She also must avoid any and all exposure to extremes of heat and cold (less than 65°F or more than 80°F), wetness, humidity, vibration, moving mechanical parts of equipment, tools or machinery, electrical shock, working in high exposed places, radiation, explosives, and caustic chemicals.  Further, she is limited to performing only simple work; making only simple work-related decisions;

---

[2]The decision is the third administrative decision in this case.  Unfavorable decisions were issued on December 12, 2006 (*see* AR 53-58) and on June 12, 2008 (*see* AR 66-73).  On administrative appeal following each of these prior decisions, the Appeals Council entered remand orders.  *See* AR 60-62 (remanding December 12, 2006 decision); AR 75-76 (remanding June 12, 2008 decision).

> dealing with only occasional changes in work processes and environment; and having only superficial contact with (cannot work in close proximity to or in conjunction with) co-workers; and she can have no contact with the general public.

AR 22. At step four, the ALJ concluded that Ms. Powers has no past relevant work. AR 26. At step five, relying on the testimony of a vocational expert, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Ms. Powers could perform, including egg processor, photo mounter, weigher, and hand stamper. AR 27.

### III.   Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh

the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**IV.     Issues Raised on Appeal**

Ms. Powers raises three claims for judicial review: (1) the ALJ erred at step three in finding she did not meet Listing 11.09(C) for multiple sclerosis; (2) the ALJ did not properly evaluate the statements provided by family and friends; and (3) the ALJ erred in making the RFC determination.

**V.      Analysis**

    **A.     The ALJ's Step Three Finding – Listing 11.09(C)**

Ms. Powers first claims the ALJ erred in finding her impairments did not meet or equal Listing 11.09(C) (multiple sclerosis). Specifically, Ms. Powers relies on evidence she claims establishes she suffers from petit mal seizures.

Listing 11.09(C) requires that a claimant establish a diagnosis of multiple sclerosis with:

> Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09(C).

At step three, the ALJ relied on the opinion of a medical expert, Dr. Thomas Lynn, to find Ms. Powers did not meet or equal Listing 11.09(C). AR 22. The ALJ thoroughly discussed Dr. Lynn's testimony regarding multiple sclerosis:

>Dr. Lynn testified that the diagnosis of MS appeared to be a "secure diagnosis." However, he opined that he did not believe that the claimant meets the criteria of the medical listings. He noted that the medical listings for MS have three criteria. The first criteria is disorganization of motor functioning, which he opined the claimant clearly does not have. The second criteria is visual or mental impairment, which he also did not believe the claimant has. The third criteria is significant, reproducible fatigue or motor function, with substantial muscle weakness on repetitive activities, as demonstrated on physical examination, resulting in neurological dysfunction in areas of the central nervous system, known to be pathologically involved. In the latter connection, Dr. Lynn noted that it is difficult to demonstrate fatigue without the active and willing cooperation of the claimant, and he added that he believed that the credibility of the claimant is in question (with respect to the alleged fatigue episodes).

AR 21.

Ms. Powers does not specifically challenge these findings by the ALJ. Instead, Ms. Powers challenges that aspect of Dr. Lynn's testimony regarding petit mal seizures. Ms. Powers contends Dr. Lynn erroneously concluded that she does not suffer from petit mal seizures.[3] But, as the Commissioner points out, even if Ms. Powers does suffer from petit mal seizures, that fact, without more, does not demonstrate that she meets or equals Listing 11.09(C). Ms. Powers fails to demonstrate the relationship between petit mal seizures and the requirements of the Listing.[4] Moreover, Ms. Powers does not point to other medical evidence to demonstrate she meets or equals Listing 11.09(C). While the record does

---

[3]The transcript reflects a phonetic spelling of "petit mal seizures" and states that Dr. Lynn testified that the way Ms. Powers described her condition did not indicate "petty mild seizures." AR 372.

[4]Dr. Lynn did testify that "with petty mild seizures" he thought Ms. Powers "would probably equal a listing" but he did not link this statement to any medical evidence matching the criteria of Listing 11.09(C) and, as noted, he concluded Ms. Powers did not suffer from petit mal seizures. AR 372.

5

contain evidence that Plaintiff suffers from fatigue, *see, e.g.,* AR 219, 258, 285, 291, her medical records provide no objective evidence of "significant, reproducible fatigue of motor function" as required by the Listing. Nor do they show the "substantial muscle weakness on repetitive activity" the Listing also requires.

The ALJ properly relied on the testimony of the medical expert to find Ms. Powers did not meet or equal Listing 11.09(C). The ALJ's finding is supported by substantial evidence in the record and Ms. Powers has failed to demonstrate the ALJ erred in making his step three finding.

### B.     The ALJ's RFC Determination; Lay Witness Statements and Testimony

Ms. Powers claims the ALJ erred in making the RFC determination because he did not address limitations resulting from her disassociation periods or lapses or her moderate limitations in responding appropriately to work pressures in normal work setting or changes in work setting. However, the ALJ's RFC did incorporate these limitations. *See* AR 22. Therefore, Ms. Powers' fails to demonstrate error on this basis.

Ms. Powers further claims the ALJ's RFC determination is erroneous because he did not address limitations resulting from her chronic fatigue. In support of this claim, Ms. Powers relies on the testimony of lay witnesses.[5]

---

[5]Ms. Powers brings a separate claim that the ALJ failed to properly evaluate the statements of the lay witnesses. Because that claim is necessarily interrelated with the RFC claim the Court addresses the claims jointly.

The ALJ did find partially credible Ms. Powers' complaints of fatigue as he limited Ms. Powers to less than a full range of sedentary work. AR 24. He did not, however, include any express limitations based on fatigue.

The record shows that in September 2004, Pam Worbes, a friend of Ms. Powers, completed a Seizure Description Form. AR 144. She described Ms. Powers' seizures stating that they last for a few minutes but that following a seizure, Ms. Powers must sleep for three days before feeling normal. AR 144.

The ALJ rejected Ms. Worbes' statements regarding the severity of Ms. Powers' fatigue, relying on the medical evidence of record and inconsistencies between the statement and other evidence in the record. For example, the ALJ stated: "[W]ith respect to the friend's statement that after seizures, which last for a few minutes, the claimant has to sleep for three days, the undersigned notes that the medical evidence does not reflect any report of being bedridden for three days, and particularly, Dr. Saidi's report, likewise, does not reflect any report needing to sleep for three days after a seizure." AR 24.[6] The ALJ additionally referenced the testimony of the medical expert who questioned Ms. Powers' credibility

---

[6] Dr. Saidi, a consultative examiner, states in his report that Ms. Powers "is tired and fatigued all of the time." AR 227. But there is no specific reference tying Ms. Powers' reports of seizures to fatigue nor is there any indication that following a seizure Ms. Powers is bed-ridden for one or more days. Dr. Saidi's final impression was that Ms. Powers' "physical examination is within the normal range." AR 229.

regarding her complaints of fatigue and whether such fatigue could be attributed to multiple sclerosis. AR 21.[7]

The ALJ also noted "questionable" observations by Ms. Worbes which detracted from the credibility of her statement. For example, Ms. Worbes' stated that Ms. Powers' eyes "change a light color." AR 144. As the ALJ noted: "generally, changes in eye color is not a phenomena that occurs in connection with seizure activity, but rather eye movement and/or perhaps dilation." AR 25.

The ALJ did not discuss the testimony of claimant's mother and sister during the course of administrative hearings.[8] Ms. Powers' mother testified that she gets "deathly tired" and the fatigue occurs "at least once a week but sometimes twice a week." AR 319. Ms. Powers' sister testified that "she'll just get real tired and it'll zap her for like a day or two days or even three." AR 342; *see also* AR 343. At the third administrative hearing, Ms. Powers testified consistent with the testimony of her mother and sister. She testified that she has "episodes" related to her multiple sclerosis and that following these episodes she gets "real tired for a couple of days." AR 364. *See also* AR 366. She also testified, consistent

---

[7]At the third administrative hearing, Dr. Lynn testified that absent episodes of fatigue, Ms. Powers "is reasonably normal and would have no significant impairments." AR 370. He further testified that Ms. Powers' descriptions of her fatigue did not seem consistent with the type of fatigue associated with multiple sclerosis. AR 370-371.

[8]Ms. Powers' mother, Nina Powers, testified at the first administrative hearing on October 26, 2006. *See* AR at 318-320, 323. Ms. Powers' sister, Vivian Jones, testified at the second administrative hearing on March 6, 2008. *See* AR at 341-344, 347.

with the medical evidence of record, that she has been prescribed medication for her fatigue. *See* AR 368; *see also* AR 285, 291.

The regulations require the ALJ to consider descriptions and observations of a claimant's limitations provided by family and friends when making the RFC determination. *See* 20 C.F.R. § 416.945(a)(3). The ALJ's failure to address the testimony of Ms. Powers' mother and sister requires a remand.

The ALJ relied on the examination notes of consultative examiner, Dr. Saidi, to conclude that Ms. Powers' allegations of fatigue were not credible. *See* AR 24 ("[T]he medical evidence does not reflect any report of being bedridden for three days, and particularly, Dr. Saidi's report, likewise, does not reflect any report needing to sleep for three days after a seizure."). But the ALJ treated Dr. Saidi's opinion inconsistently. In a different portion of the decision, the ALJ rejected Dr. Saidi's findings about the frequency of Ms. Powers' seizures stating: "the undersigned notes that inasmuch as Dr. Saidi is not a treating physician, but rather a consultative examiner for the state agency, the foregoing report necessarily was based upon the subjective report of the claimant, with no personal knowledge by Dr. Saidi." AR 19.

In addition, contrary to the ALJ's finding, the medical records do support Ms. Powers' testimony regarding fatigue. *See* AR 219 (10/2004; episodic extreme fatigue for two days); AR 258 (6/2005; episodic fatigue which lasts for about one day); AR 285 (11/2005; persistent fatigue and medication prescribed for treatment of fatigue); AR 291 (9/2008; excessive fatigue lasting several days).

Noteworthy is the fact that the lay witness descriptions of Ms. Powers' fatigue span the time period 2004 through 2008. Similarly, the medical reports describe fatigue for that same four-year period.

To the extent the ALJ relied on the testimony of the medical expert to discount Ms. Powers' complaints of fatigue, that reliance is misplaced. As discussed above, the medical expert was rendering his opinion on whether Ms. Powers met the listing for multiple sclerosis. He was not providing an opinion about RFC. The medical expert questioned whether Ms. Powers descriptions of fatigue were consistent with a diagnosis of multiple sclerosis. But for purposes of RFC, the diagnosis to which the fatigue is attributed is not as significant. Rather, the relevant inquiry is the degree to which the fatigue limits RFC. And, the medical expert testified that fatigue is a "recognized component" of multiple sclerosis. AR 370. He further testified that the record did not allow him to provide a "good answer" about Ms. Powers' functional limitations. *Id.*[9]

For all these reasons, the ALJ's failure to address the testimony of Ms. Powers' sister and mother requires a remand for a proper RFC assessment. *Compare Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (remanding for ALJ's failure to consider uncontroverted lay testimony of claimant's wife corroborated by the medical evidence). On remand, the ALJ is reminded that he may not pick out portions of the medical records favorable to his

---

[9]On remand, if further medical evidence is warranted regarding Ms. Powers' fatigue, the ALJ should comply with his duty to develop the record. *See Maes v. Astrue*, 522 F.3d 1093, 1097-1098 (10th Cir. 2008); 20 C.F.R. § 416.912.

interpretation, while ignoring less favorable evidence. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008); *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by November  2nd , 2011. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  12th  day of October, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE